Good morning. May it please the Court, my name is Bill Kirshner. Do you want to keep your voice up so we can all hear? Yes, sir. Is that better? My name is Bill Kirshner. I represent the petitioner in this case, Timothy Blowers. I am going to try to reserve some of my time for rebuttal, and I understand I have to keep track of that myself. We might get the time clock to start there. I'm already ahead in this game. There it goes. Now you get to go. The issues that I intend to concentrate on today are the two issues that have been certified for this appeal. But before I discuss those, I would like to strongly urge this Court to grant our motion to expand the Certificate of Appealability in this case. That motion has been presented pursuant to Rule 22-1e in our briefs. And the reason that that should be expanded is because all of those issues are very strong. They're constitutional issues, but more than that, they are essentially the same issues as the other issues, which is ineffective assistance of counsel. The case is really about not whether counsel's conduct fell below the standard. We know that it did. We've submitted two affidavits of highly experienced, well-respected attorneys in Tucson to that effect, and the government has submitted nothing in contradiction. And all of the rulings have been based really on the second prong of Strickland, which is prejudice. And if you don't grant the Certificate of Appealability expansion, then what you're doing is sort of balkanizing the prejudice from each of these issues, when really it should be looked at in its entirety to see if counsel had functioned properly, if he had done his job, what the outcome would have been in this case. Now, turning to the first issue in this case, that is the issue of the hearsay letter. As the court is well aware, that letter is the only evidence of the dates that were in the indictment in this case. Those were crucial to this case strictly by virtue of the structure of the indictment. If you did not have different dates, you would have had nine different groups of essentially the same count. The indictment would clearly have been multiplicitous. So those were required to have been shown. As a matter of fact, the district judge dismissed three of those sets because they weren't in this hearsay letter. So the district judge certainly understood that those needed to be proven. And this letter was the only evidence of those dates. This letter was admitted without objection by the defense. Excuse me, counsel. Didn't the jury acquit on some of those counts as well? Yes, the jury acquitted on many counts. But on the counts that it convicted on, it needed to go through and line up these dates. And it certainly would not have been able to do that without this letter. Wouldn't the fact that they were reasonably near the dates be sufficient? It wouldn't have been sufficient in this case because the indictment was structured with those particular dates. So that was something that the government alleged and the government had to prove. And I think that the trial court's ruling in dismissing three sets of those showed the court's recognition of that as well. There was evidence that, you know, it was all around the same time within a year or so. But nevertheless, there were a lot of different counts that were around that time. And what you would have gotten is convictions on things that were essentially the same actions. So they really needed to line those up. And that was the whole purpose of this letter. That's the harm of the letter. Now, the court below in the habeas corpus proceedings said, well, this was harmless error because it would have been admissible as a recorded recollection under Rule 8035. That ruling was erroneous because the rule itself requires that the statement have been made while the matters were fresh in the witness's memory. And we certainly know that that was not the case here. This letter was written a year afterwards. It was written about events that were not particularly alarming or something that would really stick in a person's memory. But beyond that, we know that it was not fresh in this witness's memory because the witness said he had to ask his wife about it. He didn't remember it. He asked his wife. They sat down with goodness knows what, maybe a calendar, maybe some other notes. We don't know what. He asked his wife. Therefore, we conclude he didn't remember. Yes. There's nothing in the record that said that he didn't remember. As a matter of fact, the record is to the contrary. He says that was a fair representation of his recollection at that time. Isn't that true? I think the record shows that because he had to ask his wife, he wouldn't have had to have done that if he had remembered. I don't understand why that would be. His wife went with him on many of these occasions. They chatted together. That's not surprising. But he said when he finished that that was a fair recollection of what transpired. By his thinking, doesn't that sort of indicate at least we have something as far as he believes that's his recollection of what took place? One of the problems with that line of reasoning is that this was not all drawn out very well at trial. It was not drawn out because defense counsel did not question any of this. So the distinction between what I'm saying and what you're saying was not really in the record. Why did you ask your wife? Why did you have to do that? If my boss says write me a letter that says what you did on a certain date, I'm not going to consult somebody else if it's fresh in my recollection. And that's the key to the rule. Well, they did it together, though. He and his wife? Yes. Much of it. Some of it they did. And he was there to testify, correct? He was. Yes, he did testify. And we're on habeas now. Yes. Is there any indication that those dates were wrong? Any extraneous information or any outside-the-record information that you can develop that would show that they were wrong and the government failed to prove the case? There is nothing in the record that shows that they were affirmatively wrong. It's just that the rule requires they be fresh in his recollection. They weren't. And that's why it would have been error to have it. The events took place within a year of the time that the letter was written? About a year before. And the trial took place within a year of the time after the letter was written? No, I think it was a couple years afterwards. Counsel, wouldn't the content of the letter have been read into the record? So the only real issue is that the letter itself was admitted into evidence, not the contents of the letter, right? Well, I would not concede that it would have been admissible and would have been read into the record. But assuming that the court holds that that is true, I think the other problem is that the letter itself was admitted as an exhibit. The rule specifically states it shouldn't have been. Can you think of any tactical or strategic reason why counsel might not have wanted to object to the letter coming in? Because we have to be highly deferential to counsel's decisions in that regard, right? Well, I do not see any reason why you would let in evidence of a particular element of the offense that the government needs to establish its case. I don't think there is a good reason for that. But here again, we've submitted these affidavits that this fell below the standard of care, but we didn't get an evidentiary hearing in this case. So that sort of factual development has not been made in the court below on the habeas part of the case. We simply were not given the opportunity to make that. But I cannot think of a reason, no. Just as an aside, can you think of a case – I'm sure you've tried many, many cases, right? I have not actually. You have not tried any cases. This may be more of a theoretical question for you, but can you think of a case where one could not question a trial strategy, failing to object or making too many objections that a lawyer might make during trial? Yes, Judge. I certainly can see where that would be a strategy that you would want to do in some cases, particularly where the evidence is going to somehow look bad to the jury if you draw it out. Because when we look at these things through hindsight, which we're not supposed to do, obviously we can probably nitpick just about any trial, correct? Wouldn't you agree? As an appellate attorney, I've had many that I actually have not been able to nitpick. But I would say this. I mean, certainly you're not supposed to look at it in hindsight. But this is an issue which is as clear as day to any attorney. When the opposing counsel comes in and says, I want to admit a letter, you know that that's a hearsay objection. And to not draw out from the witness that this doesn't fit is a recorded recollection. I guess it's rather strange, though, that you're basing your argument on this, where you had every opportunity to find out why he did not cross-examine. By having a deposition in the proceedings in which you were involved in the trial court. And yet there's none of that evidence here. You had the opportunity to bring that evidence in by finding out why he didn't cross-examine. He may have had a very good reason. We all know as former trial attorneys that sometimes you have a reason for not cross-examining. But we are prepared. There's nothing we can base upon, it seems to me, our decision that he failed to cross-examine because we don't know why he didn't cross-examine. Or object. But beyond that, what possible reason could there be for not objecting to sending the letter? But you had every opportunity to explore that when you brought your 2255. We didn't do any depositions. This was at issue for a long time. There was some procedural things that happened in the case that I'm sure you were aware of, of the original judge, and so forth. So at no point did we do any depositions. You could have done so but did not do so. So how can we base a determination at this level when you failed to provide the evidence upon which we could make such a determination? Well, it's not my understanding that we are required to show that. Rather, we're required to make a preliminary showing. Of course you're not required to. But if you're going to base your argument on his failure to cross-examine here before us, we have to have some record below at the 2255 proceeding as to why he did not do so. And we all know that we make trial decisions based upon something we know or believe, and we don't have that before us. So I don't see how this is going to fit into our determination. Well, and I would urge the Court to also consider the fact that it was not objected to as the witness going to the jury. I'm sorry, the letter going to the jury. The rule specifically states the letter is not supposed to go to the jury. Now, of course, as you pointed out, maybe it could have been read into the record. But the Tenth Circuit has mentioned in the Daisy case that what happens when you send that particular document to the jury is that it gives it undue evidence and it allows the jury to do just what it did in this case, to take these dates in the indictment and line it up with this letter. That was something that under the rule was absolutely not supposed to have been done. And to say that it's harmless sort of renders the rule a nullity. Why have the rule? Obviously there's a reason for it. Why have the rule if you can just violate it without any prejudice? Getting back to my question to you, the jury did in fact acquit on some of the counts. Yes. Evidencing that the jury was looking at the dates and looking at the evidence and saying this count will stand and this count will not stand, right? So they obviously looked at the evidence. They were pretty careful at looking at the evidence, right? Yes, although I don't think it's necessarily the dates that caused their acquittal, just the failure of proof on various elements. But it could have been the dates. But yes, I do think that the jury looked at it carefully with what they had. But if counsel had done his job and made sure that the jury had the evidence that they should have been looking at, then I think there is a reasonable probability here that there would have been a different outcome in this case. And that's why Mr. Blower's count should be,  And with that, I would turn to the second of the certified issues, which has to do with the archaeological count. As this court is aware, that was count eight, the only archaeological conviction in this case. It was a count that really had to do with the parking lot at the Indian Kitchen Rock that all the government's evidence went to that parking lot, virtually all of it. But wasn't there evidence of shards, pottery shards, that were turned up during the grating that were found at the sides of the road? Yes. And the statute requires damage to an archaeological resource, not an archaeological site, correct? Correct. However, this court... Would they not call those pottery shards an archaeological resource? I think they would be if the people who... So there was evidence from the jury to support that count. Right. They would be an archaeological resource if the person who is charged knew or should have known that they were an archaeological resource. And that's the Lynch case. That's this circuit's precedent. And the problem is, and that was the basis for the district court's holding on that count, that, well, gee, the jury could have convicted anyway because of these pot shards along Indian Kitchen Road. But I would point out that that was really not what the government counted on on Rule 8, that its evidence really had to do with this parking lot, which was not a part of the archaeological site. But as far as those pot shards... Are you saying that the parking lot is not an archaeological resource within the meaning of the statute? Is that your position? Yes, it is, and that's what our expert testified to, and that's really unrebutted in this case. Is that a resource or is that the site? It's not an archaeological resource. I'm sorry, did you say it is not or it is? It is not an archaeological resource. It's a parking lot. And so what happened here is the district court based its ruling on these pot shards that were out in the desert. As you know, these are things that are basically the same color as the desert, little brown pieces of broken pottery. The testimony in this case is unrebutted, that nobody would have even seen those that were there. Nobody would have known that those were there. Isn't the parking lot there in order to make sure that the cars don't go over the site? No. The parking lot was just graded by people many years ago. You've got to remember, these were all old mining roads where trucks would rumble up and down these roads for generations, and that lot was put in there not by the government, not by anyone in official power, but just by people, the neighbors who had parked there. So the lot did preexist this trespass by decades, but it was not put there for a particular reason to protect the site, at least as far as the record in this case goes. But the real question is, you know, was the court erroneous by saying that the jury could have convicted based on these pot shards? And the fact is they just couldn't have. Nobody would have known that those were there. Nobody reasonably should have known that those were there on these roads where the mining trucks have been going back and forth for generations. So the jury could not, and I don't think did, convict on those counts. Now, I would like to reserve a little bit of my time for rebuttal here, but I would like to just touch on the two uncertified counts in this way. I don't want to argue them to you because they haven't been certified yet, but I think what the court should do is look at those two issues as essentially cutting the Gordian knot. You had very complex testimony about how much a tree was worth and how many trees there were and how many trees there were on this piece of land, and it went back and forth. It was very difficult for a jury to determine that, but what a jury could understand is that there is not going to be $400,000 worth of trees on land that would sell in fee simple with all the trees on it for $3,400. There's no way that there could be that much, and that would have shown the jury that that was a preposterous argument. That would have shown the jury that the government's proof in this case was not to be relied on, and therefore there is a strong likelihood that there would have been a different outcome. Okay, do you want to save any time for rebuttal? Yes, I will reserve the balance of my time. Thank you. We'll hear from the appellee. Good morning, Mayor. Please escort. My name is Wallace Klein-Denis. I'm an assistant United States attorney with the office in Tucson, Arizona, and I represent the respondent in this case. I wanted to follow up on the first issue concerning the letter itself. It's true, as Judge Menendez pointed out, that there may be strategic decisions made by trial counsel not to object to a particular piece of evidence. In fact, there are cases that talk about just because a counsel did not object to hearsay being admitted doesn't automatically make it something that prejudices the trial. I'm not sure where it gets us here. In the context of this case, Judge Tshima took a close look at the case and decided not to get into whether or not there has been some violation of standards, but said even if there were, there was no prejudice in this case. That's correct. And that's the burden that the appellant has here is to demonstrate prejudice, which is the second prong of any case under 2255. So he didn't even get to that issue, and I can see why he'd have to hold a trial if he did, but if he could do it on the basis of prejudices going that way. Judge Tshima was a district court judge long before he was a court of appeals judge, and I understand his reasoning. And I take it that your responsibility then is to show us that he was correct, that there has no prejudice been shown on this record. That is, even if there were inappropriate conduct on the part of counsel, that there's no prejudice. You're absolutely correct, Your Honor, and I was really replying to Judge Mendez's questions of counsel. That is not the issue. So that's the part of the case that I'm most interested in. Right, and so am I. And maybe I shouldn't have wasted my time responding to something that's really irrelevant. What's relevant to the issue of the letter, as Judge Tshima found, was whether or not the information contained in the letter would have been admitted one way or another had trial counsel objected when it was offered. Now, appellant's counsel talks about past recollection recorded, which is under Rule 803.5. I believe, as Judge Tshima found, that had the witness indicated he had no present recollection of the dates that were involved in the grading, Judge Tshima found that government counsel could have asked him, was there anything that would refresh their memory? It would be the letter. And then ask the witness after he's looked at the letter, does that refresh your recollection? That would have been a way, and then he would have been testified about the dates. The letter itself is not very complex. We're talking about three groups of dates, in August, in October, and in December and January of 1997 and 1998. In fact, Your Honors, if you look in my brief, I set forth the quality before we get to the letter itself. And Steve Nelson admits or says that he recalled that he gave the grader to Mr. Blowers to use to blade the land in December and January. It's the beginning part of the quality in my brief. So he himself, before he was even asked about the letter, demonstrated a recollection of when Mr. Blowers had the grader, which applied to those dates in the indictment. But isn't Mr. Kirchner's argument that it's the precise date that controls with regards to each count? Because otherwise, you would be perhaps using the same date in order to convict a defendant of various counts. So you're really talking about a specific date for each count as opposed to a global set of dates, right? No, Your Honor. I don't believe the government has to prove, even though it's alleged the indictment, because it's not an element of the offense, the precise date charged. You could actually have double jeopardy, though, in that case. That's correct. You might wind up convicting an individual of ten counts essentially for the very same conduct, right? Well, I'm not to say you throw out the dates altogether. What I'm saying is the courts have held that the government is not tied to the specific date charged in the indictment. The purpose of the date is one for statute of limitations purposes, notice to the defense to prepare his case, and also for double jeopardy. So if Mr. Nelson was asked to look at the letter to see if it refreshed his memory, and if all he could remember was it happened in August and in October and not the specific dates, those track the counts of the indictment. We're not talking about a variance of more than a month, and we've cited cases in our brief where there have been great time periods of variance between the date alleged and the indictment. Several months. Several months. Correct. Let me ask you a question, though. I thought this was interesting. So Mr. Nelson testified regarding the contents of the letter, and he said at one time that his wife assisted him. I think Mr. Kirchner brought this up in his argument, that his wife assisted him in drafting the letter, right? Now, there's a case, U.S. v. Hernandez, where there were two participants who drafted a letter, and in that case, but I can't tell you what circuit it's from right now. Anyway, in that case, the circuit court said that it was not error to allow that letter in because each of the participants in drafting the letter had actually testified. But that wasn't the case here, right? That's correct. Okay. That's correct. I think that before you even reached the issue of whether or not the letter was past recollection or recorded, as Judge Tashima found, the dates would have come in most likely after Mr. Nelson had his memory refreshed. And he made the specific factual finding that the dates in the letter were accurate, that Mr. Nelson put in accurate dates. His wife went out to the site with him on more than one occasion. They worked together. So it wasn't like his wife was devoid of any knowledge, number one. She did go out with him on some of the times when he graded. The other reason why it's probably accurate, why the judge was correct, is that Mr. Nelson's employer had bought some land from Mr. Blower's, and part of the purchase price was that he was supposed to do grading for Mr. Blower's. And so Mr. Madsen, who employed Mr. Nelson, certainly had an incentive for Mr. Nelson to make notation somewhere. And it wasn't just on a calendar. I think the testimony by Mr. Nelson was that they looked at other records as well. But Mr. Nelson had an incentive, because of his employer, to keep track of the dates that he went out there and graded the land. And Judge Tshishima was correct in finding that that fact was accurate. And the government submits that even before you get to past recollection recorded, there's no reason to believe that had an injection be made that Mr. Nelson could not have looked at that letter, refreshed his memory, and testified apart from him. So those dates in the letter would have come in. Well, getting to a question that Judge Wallace asked, I believe, if I'm not mistaken, regarding the prejudice issue, weren't there witnesses, other witnesses, who testified specifically as to some of the dates, including one, as I recall, talked about something happening on Super Bowl, was it Super Bowl Sunday? 1998. Yeah. I believe the Patriots won that one. I'm not sure, though. Did they? In answer to the court's question, I apologize for being— Mark Anderson was a witness who lived out in that area, and Mr. Blower has tried to sell Mr. Anderson some of this land. And Mr. Anderson was an avid hiker, and hiked all around that area. And he testified at trial that beginning sometime in early fall, August or September, he started noticing the road grading happening. New roads were being cut in. Existing roads were being widened. And he testified that that extended all the way from August and September to early January of 1998. So his testimony established that grading was going on on the dates that Mr. Nelson put in his letter. Mr. Easterly, who lived off the site—in fact, he's the one who alerted the BLM that there had been some road grading out there— he also testified that in the fall of 1997, he was aware of grading going on south of where he lived, which would be consistent with the area that the BLM was on. So there was independent evidence, apart from Mr. Nelson and apart from his letter, that grading had been going on during the fall of 1997. Was there also evidence that he was having a party, I take it? So there was also some evidence of when the party was. Mr. Blower and his co-defendant held a party on June 7th at the Indian Kitchen site. And that goes, really, to the ARPA issue. But they substantially widened and graded the area below the site for the party. And there's testimony that Mr. Blower told Mr. Nelson prior to the party that he had been grading the roads out there himself. And then there was an individual who went to the party who testified that that small parking area had been substantially widened and there was obviously a car that was buried and whatnot. So there was other evidence, besides Mr. Anderson and Mr. Easterly, that proved that grading was going on during the time period covered in October and August of 1997. The fact that the letter, I believe Judge Tshishuma was correct, he found that Mr. Nelson, when he prepared the letter, it was fresh in his mind. It doesn't have to be contemporaneous with the event. There are cases that talk about a document being prepared months after the event and still come in as past recollection recorded. Judge Tshishuma found that. It would have been admissible, if not under refreshed memory, where it would have come in orally from Mr. Nelson. It would have come in under Rule 8035. And indeed, it did. Now, obviously, the letter came into evidence. There's only one case that counsel could find where that was reversible error because government counsel was the proponent of the letter was the Ray case. And we've distinguished that because there is ample evidence here of the crimes in Ray. There was only one document, and that was a document that was admitted by the government. But in the Daisy case that I cited in my brief, in the Marshall case, the Ninth Circuit, I believe, in the Marshall case, a chemistry report came into evidence under past recollection recorded, offered by the government, and there was no reversible error. So with respect to the second issue in the case is whether or not Mr. Blower's counsel was derelict in not calling Alan Dart to the stand to prove that the archaeological site was not damaged. And let me just say at the beginning, if the court looks at the indictment in this case, there is no mention in the time period in the indictment around May and June of 1997, there's no mention in the indictment that refers to the Indian Kitchen site. It just talks about the area near Tucson, but it also gives specific township sections and whatever. So there was nowhere in the indictment that the government had to prove on those dates that Mr. Dart's site was damaged. Indeed, Judge Tashima, in his footnote number seven in his order denying the petition, noted that the judge's instructions to the jury did not require the jury to find, as to those counts in June of 1997, that the defendant damaged the site. The indictment, the instructions, were not site-specific. Mr. Dart... Were not date-specific? Well, it was date-specific because that's when the party occurred, when the car was buried and the parking lot was widened. Mr. Dart was an archaeologist. He didn't work for the federal government. ARPA does not require proof of the site. It talks about damages to archaeological resources. Mr. Kirshner argued that it has to be knowing, so they have to know that it's an archaeological resource. So in order for the conviction to stand, if you will, you would have to find that whoever graded the road knew that when they were grading the road, there were these pottery shards that were going to be disturbed, right? That is the law under Lynch, but he does not raise that as an effective assistance to counsel in this petition. That would have been probably raised as a direct appeal, that the court should have dismissed those counts because there is lack of intent or knowledge by the defendant, and that's not the case here. We're talking about whether or not defense counsel did not provide a sufficient defense by calling Mr. Dart to testify. It's more of a sufficiency of the evidence, I believe. His argument? Yes, and that's not what the issue is here today. The issue is whether or not Mr. Dart should have been called as a witness. There was no problem with the instructions. I'm sorry? I take it there was never any problem with the instructions. No objection was made. Judge Tashima noted that that's how the judge gave the instructions to the jury, and the jury made their decision. ARPA does not talk about site-specific, it's resource-specific, and it's clear in ARPA that pottery shards, tools, other artifacts are what's the issue in the case. Is there damage to artifacts, not to a site? Mr. Dart is a private archaeologist, and indeed it was a very casual trip out to that site years before this event, and he drew an index card showing the site, and he filed it with the Arizona State Museum at the University of Arizona, and that card's not generally accessible to the public. So to say that Mr. Dart is the one who determines what the site is, here you have a determination that's kept from the public view. But there was a permit to do some grading, was there not, or was there just a permit to use the facilities? There was a permit. The defendants held a party there to try to sell the land to clients, and it was a barbecue with a band, and the permit was just to use that area in the parking lot for that purpose. And indeed what happened though was that they substantially widened the parking lot, they also buried an abandoned car, which meant, as the archaeologist testified at trial, that disturbed any archaeological remains that were underneath the surface of the parking lot. So although they did have a permit, by their conduct they exceeded the limits of that permit. Judge Tashima correctly found that you don't look at the site, because it's not an element of ARPA, he found that there was a disturbance of resources in the Indian Kitchen Road next to the site, and he also found that there was a disturbance caused by the burying of the automobile. He also found that the government had proved, through its archaeologists, that the amount of damages exceeded $500, which is what the government had to prove in this case. So the government submits that Judge Tashima correctly found facts that are not clearly erroneous, that this court can adopt, and find that defendant's counsel at trial wasn't so negligent that his performance rendered the trial fundamentally unfair. And we would ask the court to find that Judge Tashima is correct and sustain his order. If there are no more questions. Thank you very much, counsel. Thank you. Revato? I've been thinking just a little bit about whether there's a requirement that I should have shown in depositions that trial counsel had no strategic reason for doing what he did in this case. And I have sort of racked my brain while sitting here and listening as best I could, and I don't think there is a requirement to that effect, and I think that this would be new precedent if this court ruled that the showing in this case was insufficient because there had been no deposition on that point. And if I'm wrong on that, I stand corrected. It was never brought up before, so I have not researched that issue. I would like to briefly mention the question of whether there was prejudice from this letter. Things have gotten all turned around here from what it is that I'm actually arguing. The government has said, well, gee, there's this other evidence of these other folks who testified to various date ranges, and they've specified it's on page 39 of their brief. If you compare page 39 of their brief to the chart on page 8 of our reply brief, you will see that those dates don't match up. You will see that in the chart there are two date ranges in the month of October. So if you were talking about folks who testified, well, gee, it was in either August or September or October, how do you account for the fact that counts 18 through 21 are differentiated from counts 22 through 25 only by the dates? They're both in October. How could you get convictions on both? That's what we're talking about. This letter should not have been permitted. It was the only evidence that allowed the jury to convict in the way that they did. The other thing that I wanted to touch on was what's turned into a sufficiency of the evidence argument under Lynch. That's exactly the opposite of what I'm arguing. That was Judge Tashima's ruling in this case that the jury could have convicted on those. I never argued that the jury could not have because they didn't convict on those. There was no issue because the jury did not convict for those pot sherds under Lynch, and they couldn't have. But now Judge Tashima has sort of imagined that they could have done that, and that's why I'm quoting the Lynch case, to say that the jury could not have convicted for the pot sherds out there because no person would have known that those were archaeological resources. And finally, in the few seconds that I've got left, what the government is asking you to do here is to say that any time somebody digs a hole anywhere in the desert, it can be an archaeological crime. It doesn't have to be part of an archaeological site. There doesn't have to be any damage to any archaeological artifact. If the government decides to investigate it, that's it. However much money they pour into it, that's how much money you owe them. It's a nonsensical whole. Time has expired. Thank you, Judge. Thank you very much. We appreciate counsel's argument. That concludes the special setting of this court here in San Diego, and we stand adjourned.
judges: Benitez, Wallace, Schroeder